736 P.2d 867
**STATE of Idaho, Plaintiff-Respondent,**

v.

**Richard ELISONDO,
Defendant-Appellant.**

**No. 16139.**

Court of Appeals of Idaho.

May 1, 1987.

816

Renae Hoff of Gunn & Hoff, Caldwell, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., David R. Minert, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

In a jury trial Richard Elisondo was found guilty of aggravated battery committed upon his seventy-three-year-old uncle. He was sentenced to an indeterminate term not to exceed fourteen years. On appeal, Elisondo contends that (1) the court erred in admitting into evidence the preliminary hearing testimony of a witness, particularly where the state failed to establish the witness' unavailability at trial; (2) undue prejudice resulted from the court's commencement of trial proceedings without Elisondo's presence in the courtroom; (3) the court's oral reprimand of Elisondo in the presence of prospective jurors during voir dire violated his right to a fair trial; and (4) the court erred in finding that Elisondo's

appeal lacked merit and in refusing to set bail pending appeal. We affirm the judgment entered below.

The record supports the following version of the facts. At the time of the crime, Richard Elisondo lived at his mother's house with his mother and his uncle, Cruse Galindo. His sister, Martha, lived in a trailer home behind the house and was a frequent visitor. On February 3, 1985, Elisondo arrived home in the early evening after spending the day drinking with friends. The only other people in the house were Martha and Galindo. Shortly thereafter Elisondo began severely beating Galindo without any apparent provocation. The beating continued periodically, despite Martha's pleas for Elisondo to stop, until Christina, Elisondo's daughter, arrived thirty to forty-five minutes later. She stopped the beating and took Galindo to the hospital where he underwent immediate eye surgery for an injury he had received in the incident.

Elisondo was charged with aggravated battery. Galindo, Martha and Christina testified at the preliminary hearing. However, Martha later failed to appear at the trial despite having been subpoenaed. Six days prior to trial, Officer Leonard Vanscoy had served a subpoena on Martha while she was seated in her car. Martha then renounced any further involvement in the case and threw the subpoena out the window. Officer Vanscoy retrieved the subpoena and placed it in the backseat of Martha's car. Martha drove down the block, got out of her car, threw the subpoena down and drove away.

Early on the morning of trial, Officer Vanscoy attempted to contact Martha to assure her presence at trial but could not find her. Later that day the officer testified, in the absence of the jury, about his efforts to locate Martha. The court, finding that a good-faith effort was made to obtain Martha's presence, declared her to be an unavailable witness. Over Elisondo's objection, the court allowed Martha's preliminary hearing testimony to be read to the jury.

After sentencing Elisondo moved for bail pending appeal. The district court held Elisondo to be ineligible for bail under I.C. § 19–2905, declared the appeal to be without merit and denied the motion. From this set of circumstances, Elisondo appeals.

## I

Elisondo asserts that Martha's preliminary hearing testimony was improperly admitted. He focuses first on the Idaho Supreme Court's decision in *State v. Mee,* 102 Idaho 474, 632 P.2d 663 (1981). In *Mee,* the Court departed from an eighty-year-old Idaho practice by condoning the admission at trial of the preliminary hearing testimony of a witness who refused to testify at trial despite reasonable efforts by the trial court and the state to have her testify. A majority of three justices, following the rationale of *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), held that the witness was "unavailable." The *Mee* decision switched Idaho's position on this issue into alignment with the great majority of other courts. *See, e.g.,* Annotation, *Use In Criminal Case Of Testimony Given On Former Trial, Or Preliminary Examination, By Witness Not Available At Present Trial,* 15 A.L.R. 495 (1921). Heavily relying on the arguments raised in the dissenting opinions, Elisondo invites us to reject *Mee.* We decline the invitation to do so. Regardless of the merit of those dissenting opinions, we must adhere to the Court's determination of the matter. Hence, we proceed under guidance from *Mee* and *Ohio v. Roberts, supra.*

■ The admissibility of prior testimony depends upon a two-pronged analysis. First, the state has the burden to show the witness is unavailable at trial. *State v. Mee, supra.* Unavailability requires evidence of a good-faith effort by the prosecution to locate and present the witness at trial. Second, the proferred testimony must contain a sufficient guarantee of reliability to allow its admission at trial. *Id.* Whether or not a witness is "unavailable" within the rule depends on whether the state has made a good faith effort to secure the presence of the witness at

trial. *Ohio v. Roberts, supra; Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *State v. Ray,* 123 Ariz. 171, 598 P.2d 990 (1979). "Good faith" is not subject to a precise definition and whether such effort has been made is left to the sound discretion of the trial judge to be determined on a case by case basis. *State v. Owens,* 103 Ariz. 541, 447 P.2d 233 (1968). *State v. McDaniel,* 136 Ariz. 188, 665 P.2d 70, 77–78 (1983); *accord State v. Chapman,* 655 P.2d 1119 (Utah 1982). Our Supreme Court in *Mee* said that the efforts of the state to locate and produce the witness are judged primarily on the basis of reasonableness. This standard is now incorporated into Rule 804, I.R.E. (effective July 1, 1985, following the trial in this case). Here, based on undisputed testimony of Officer Vanscoy, the trial court concluded that a reasonable good-faith effort was made to secure the attendance of Martha. On appeal, we will uphold this ruling in the absence of a clear abuse of discretion.

Elisondo asserts that neither prong of the test for admissibility was met. He first argues that the state's easy recourse to Martha's preliminary hearing testimony resulted in weak, insufficient efforts to locate her for trial. Due to this lack of a good-faith effort, he argues, the prosecutor failed to establish the requisite unavailability in order to use Martha's earlier testimony. While the *Mee* rule may allow the prosecution to minimize its search in reliance on the preliminary hearing testimony, we cannot say that happened here. The record reflects that Martha was cognizant of the subpoena which required her appearance at trial. She had testified previously, apparently without incident or complaint. Counsel for both parties conceded that witnesses rarely fail to appear at trial when subpoenaed.

■ The state deployed Officer Vanscoy several hours before trial to assure Martha's appearance. He went first to Martha's home in Parma, Idaho, only to find that she was not there. He stopped next at her employer's, having no better luck. His subsequent search included conversations

with her acquaintances, a search of Parma for her car, and a trip to the nearby Roswell area where the officer spoke with Martha's crew boss. However, Martha was not found. Elisondo complains that further action was necessary to meet the *Mee* good-faith requirement. He fails, however, to outline what action would suffice. We hold that the efforts taken by the state were sufficiently reasonable to meet its burden of proving a good-faith effort in order to establish Martha's unavailability.

Elisondo's challenge to the second prong of the test—the reliability of the preliminary hearing testimony—is based on numerous "inaudibles" reported throughout the transcript of the testimony, resulting in gaps containing allegedly relevant information. Generally, where an unavailable witness has testified previously in a judicial forum providing the accoutrements of a judicial proceeding and allowing an adequate opportunity for cross-examination, the previous testimony reflects sufficient reliability for admission at trial. *State v. Mee, supra; State v. Brooks*, 64 Or.App. 404, 668 P.2d 466 (1983); *State v. Brooks*, 638 P.2d 537 (Utah 1981). Elisondo declares that gaps in the transcript due to inaudible, untranscribed testimony make the remaining testimony unreliable, mandating its exclusion. The testimony was transcribed from a cassette recording of the preliminary hearing, and the transcript was adequately authenticated as containing "as accurate and complete a transcription of said cassette as [the transcriber] was able to make." The court acknowledged the inaudibles, concluding that "they're collateral matters talking about the description of the property that has nothing to do particularly with the central issues that are involved in the trial of this case. I don't see where any prejudice can arise from an inaudible in that kind of a situation."

We agree with this assessment. The record is devoid of any prejudice toward Elisondo stemming from the inaudibles; they do not detract from the reliability of the preliminary hearing testimony. Because the prerequisites for admission of the preliminary hearing testimony were ad-equately met below, we hold that the judge did not abuse his discretion in admitting the testimony at trial.

## II

Next, Elisondo asserts that unfair prejudice resulted from two separate events, each requiring reversal of his conviction. The first instance involved Elisondo's absence from the courtroom as the trial began. Both counsel were present before the judge. Elisondo, who was in the custody of the sheriff, had not been brought into the courtroom. The jury panel also was not present. When the judge inquired whether counsel were prepared to proceed, each responded affirmatively. The state then proceeded to explain briefly Martha's absence—a process resulting in less than one page of the trial transcript. The explanation closed with a request for issuance of a warrant for Martha's arrest. Defense counsel then alerted the court to Elisondo's absence. Elisondo was immediately admitted into the courtroom, and, pursuant to the court's request, was briefed by his counsel in respect to the preceding events. The court thereafter granted the state's request for a warrant and went ahead with the trial.

Where the accused is absent from the courtroom during part of a criminal proceeding, the absence may be harmless error. *State v. Savoy*, 109 Ariz. 531, 514 P.2d 452 (1973); *State v. Beeson*, 248 Or. 411, 434 P.2d 460 (1967); *accord Snyder v. Massachusetts*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934). If we determine, beyond a reasonable doubt, that the jury would have reached the same verdict absent the alleged error, the error must be deemed harmless. *State v. Hall*, 111 Idaho 827, 727 P.2d 1255 (Ct.App.1986).

Initially, we note that Elisondo failed to establish that his absence from the courtroom was due to anything other than inadvertence. The record indicates only that both counsel and the court were remiss in commencing proceedings without Elisondo's presence. Beyond that, no harm is shown to have resulted from Elisondo's brief absence. We hold that if any error occurred, it was harmless.

■ The second instance concerned the judge's statements to Elisondo in front of prospective jurors during selection of the jury. After both counsel had questioned and passed a prospective juror for cause, Elisondo interjected a question directed at the juror. The question was asked and answered without comment from either the bench or counsel. When the process was repeated with the next prospective juror, counsel remained quiet but the court interrupted Elisondo with an instruction concerning the proper procedure for questioning the jurors. The following conversation occurred in the presence of the jury panel:

MS. HOFF: We'd pass Mr. Squibb.

DEFENDANT: I have one question, sir.

COURT: Take the—You have an attorney. If you have questions and you're not satisfied with her examination, you write out any questions and give them to her before she passes a juror for cause, Mr. Elisondo.

DEFENDANT: I understand, Your Honor.

COURT: If you have some question you want your counsel to ask, just give it to her, and I'll let her do that.

DEFENDANT: Yes, Your Honor.

COURT: When she passes for cause, that's passed.

DEFENDANT: Yes, Your Honor. However, may I ask a question of the Court, please?

MS. HOFF: Your Honor, could I move for exclusion of the jury?

The jury panel was thereafter excused, and the district judge reiterated the proper procedure for Elisondo's exercise of his right to question the jurors. Elisondo contends that the judge's admonishment of Elisondo in front of the jury prejudiced his right to a fair trial.

Idaho Criminal Rule 24(a) outlines the appropriate procedure for examining prospective jurors.

Voir dire examination of the prospective jurors drawn from the jury panel shall first be conducted by the court. The attorney for the plaintiff, and then the attorney for the defendant, and then the attorney for each other party to the action shall then be permitted to propound questions to prospective jurors concerning their qualifications to sit as jurors in the action. The voir dire examination shall be under the supervision of the court and subject to such limitations as the court may prescribe in the furtherance of justice and the expeditious disposition of the case....

The phraseology of the entire section emphasizes the duty of *counsel and the court* to propound any necessary questions in order to retain a fair and impartial jury. Further, the court is given discretion in prescribing such limitations as are necessary to expediently dispose of the case. I.C.R. 24(a); *State v. Merrifield*, 109 Idaho 11, 704 P.2d 343 (Ct.App.1985). Accordingly, we will not disturb the court's action below in the absence of an abuse of discretion.

■ Where a judge's comment indicates judicial prejudice to the jury, error occurs. The record in this case shows only that the judge clarified the appropriate procedure for Elisondo in front of the jury. In some instances it might be more appropriate for the court to excuse the jury briefly in order to ascertain if there is any problem or misunderstanding between a defendant and his counsel as to the proper procedure or as to the extent of the defendant's active participation in the conduct of the trial. Discretion must be used to avoid embarrassing counsel or allowing a defendant's own inappropriate conduct to prejudice the defense. However, a simple clarification, such as the court gave in this case, is appropriate unless there are indications of a serious problem. Here, the record does not indicate that the court should have excused the jury before attempting to correct the course of the voir dire. The language used by the court did not seem severe, nor unduly abrupt. Indeed, it is equally plausible that the court's verbal clarification generated sympathy in favor of a defendant anxious to aid in his own defense but ignorant of the restrictive procedures of the judicial forum. We find no abuse of discretion nor any indication of bias on the part of the judge in this event. We conclude that no error occurred.

## III

Elisondo's final contention is that the district court abused its discretion in refusing to grant bail pending appeal and in determining that Elisondo's appeal lacked merit. Generally, this issue is not raised in an appeal because the requested relief—reversal of the order denying bail—either becomes unnecessary or is inappropriate once the appeal on other issues is decided with finality. Here, Elisondo has attempted to give the issue greater weight by urging that the ruling denying bail was another example where the trial court, by an abuse of discretion, indicated some operative bias throughout the case. In this regard we have examined the record carefully. We are not convinced there is any merit to this argument. Moreover, we will say, without further discussion, that we have examined the record of the hearing when bail was denied and we hold that the court's ruling did not represent an abuse of discretion.

The judgment of conviction is affirmed.

WALTERS, C.J., and BURNETT, J., concur.